# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **John Daniel Patterson,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 5:13-CV-00842-MHH |
| } | |
| **CAROLYN W. COLVIN, Acting** } | |
| **Commissioner, Social Security** } | |
| **Administration,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 1383(c), plaintiff John Daniel Patterson seeks review of the decision by the Commissioner of the Social Security Administration denying his claim for supplemental security income. After careful review, the Court affirms the Commissioner's decision.

## STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and her 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## PROCEDURAL AND FACTUAL BACKGROUND

Mr. Patterson applied for social security income benefits on October 27, 2009. (R. 23, 161).[1] He alleges that that his disability began on December 20, 2006. (R. 23, 161). The Social Security Administration initially denied his

---

[1] The ALJ's decision states that Mr. Patterson applied for benefits on October 27, 2009. However, Mr. Patterson's application summary indicates that he applied for benefits on October 28, 2009. (R. 161). Whether Mr. Patterson applied for benefits on October 27, 2009 or October 28, 2009 is immaterial to the Court's analysis.

2

application on January 27, 2010. (R. 23, 91). Mr. Patterson filed a written request for a hearing before an Administrative Law Judge (ALJ) on February 19, 2010. (R. 23). The ALJ held a hearing on July 22, 2011. (R. 23, 45-90, 115-117).

Mr. Patterson was 23 years old when he filed his application for benefits. (Doc. 11, p. 2; R. 161).[2] He had a high school education, was able to communicate in English, and did not have past relevant work. (R. 36, 52-53). On August 26, 2011, the ALJ denied Mr. Patterson's request for disability benefits. The ALJ found that Mr. Patterson had not engaged in "gainful activity since October 27, 2009, the application date." (R. 25). The ALJ concluded that Mr. Patterson "has the following severe impairment: a major depressive disorder." (R. 25). The ALJ also noted that Mr. Patterson has the following non-severe impairments: mild gastritis, a history of obstructive sleep apnea, and internal knee derangement status post arthroscopic repair. (R. 25). However, the ALJ stated, "the record shows that [Mr. Patterson's] mild gastritis is controlled by medication . . . and his history of sleep apnea and internal knee derangement status does not result in any work-related limitations." (R. 25). Further, the ALJ found that Mr. Patterson's pain syndrome "is not a medically determinable impairment." (R. 25).

---

[2] Twenty-three is defined as a younger individual by 20 § C.F.R. 404.1563(c).

The ALJ determined that Mr. Patterson does not have an impairment or combination of impairments that meets or medically equals a listing in the Regulations. (R. 30).[3] The ALJ then concluded that Mr. Patterson has the residual functional capacity (RFC) to "perform a full range of work at all exertional levels" and that he could "perform routine repetitive tasks involving no more than short, simple instructions and simple work-related decision-making, with few work place changes." (R. 36).

After noting that Mr. Patterson has no past relevant work, the ALJ concluded that considering his age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Mr. Patterson could perform, including cashier, counter clerk, and product inspector. (R. 36-37). Accordingly, the ALJ found that Mr. Patterson is not disabled as defined in the Social Security Act. (R. 38).

On March 4, 2013, this became the final decision of the Commissioner of the Social Security Administration when the Appeals Council refused to review the ALJ's decision. (R. 1). Having exhausted all administrative remedies, Mr.

---

[3] Specifically, the ALJ determined that the Mr. Patterson's depression did not meet the criteria of Listing 12.04 in 20 CFR Part 404, Subpart P, Appendix 1, because she did not find that Mr. Patterson has a marked restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decomposition, each of extended duration. (R. 30-31). The ALJ found that Mr. Patterson did not meet the requirements of paragraphs B or C of the Listing 12.04. (R. 31).

4

Patterson filed this action for judicial review pursuant to §1631(c)(3) of the Social Security Act.  *See* 42 U.S.C. §1383(c)(3).

## **MEDICAL EVIDENCE**

In evaluating Mr. Patterson's claim for benefits, the ALJ considered extensive medical evidence.  With respect to Mr. Patterson's alleged physical impairments, the ALJ reviewed treatment notes from Dr. Rajesh Patel, a specialist in the field of colon and digestive disease.  Dr. Patel stated in his treatment notes from October 30, 2009 that Mr. Patterson had "undergone exhaustive evaluation in the past, which had been unrevealing other than findings of previous ulcers." (R. 25, 409).

Regarding Mr. Patterson's alleged knee pain, the ALJ reviewed treatment notes from Dr. Ernest Hendrix, who saw Mr. Patterson seven times between November 29, 2007 and June 17, 2008.  (R. 25, 284-288).  In November 2007, Mr. Patterson complained of "constant knee pain" and "constant back pain."  (R. 288). Dr. Hendrix noted that Mr. Patterson had a left knee scope earlier that year but that Mr. Patterson had no history of any serious knee injury that predated his pain.  (R. 288).  By February 2008, Dr. Hendrix noted that Mr. Patterson's pain was "doing pretty well on the current regimen."  (R. 286).  Notes from Mr. Patterson's April and May 2008 visits indicate he complained of back pain, but the notes do not reference knee pain. (R. 285).  During a visit on June 17, 2008, Mr. Patterson told

Dr. Hendrix that Mr. Patterson's "knee doctor . . . [could not] find anything wrong with his knees." (R. 284). The ALJ also reviewed treatment notes from Dr. J. Randall Riehl from October 30, 2008, which state that Mr. Patterson did not have any "true intrinsic knee pain which was contributing to his symptoms." (R. 27, 322). Dr. Riehl concluded that Mr. Patterson needed no further treatment on his knee. (*Id.*). The record also reflects a negative MRI of Mr. Patterson's left knee in July 2009. (R. 630).

Regarding Mr. Patterson's hip pain, the ALJ consulted evaluations from Dr. John Roberts, Mr. Patterson's initial pain consultant. Dr. Roberts noted that Mr. Patterson's MRI "showed no abnormalities and computerized tomography scans of his abdomen and pelvis were normal." (R. 27, 266). Dr. Roberts concluded that Mr. Patterson did not have degenerative disc disease. (R. 266-268). Dr. Roberts expressed concern about Mr. Patterson's medication use and noted that long-term use of medication was "not a good option" for Mr. Patterson. (R. 27, 271). The ALJ pointed out that Dr. Ernest Hendrix also was uncomfortable prescribing pain pills for Mr. Patterson because Mr. Patterson was "somewhat" dependent on them. (R. 28, 288).

To evaluate Mr. Patterson's allegations of fibromyalgia and back pain, the ALJ consulted notes from a number of treating physicians. Dr. Vijay Jampala, a treating physician specialized in rheumatology, stated, "I do not see any

inflammatory joint disease. He has subjective joint pain only […] He does not have any underlying autoimmune connective tissue disease" (R. 28, 407). In December 2009, Dr. Thomas M. Fitzpatrick, another treating physician, diagnosed Mr. Patterson with "chronic pain syndrome left lower extremity." (R. 623). Dr. Fitzpatrick wrote the following after he examined Mr. Patterson:

> The patient has full range of motion of the left knee. He complains of pain in the back of the knee with full extension. . . . The patient has normal alignment in the lumbar spine with a level pelvis. . . . There is good range of motion of the lumbar spine. Neurologic exam shows intact and symmetrical deep tendon reflexes in the lower extremities. Muscle testing in the muscle groups of the lower extremities is intact and symmetrical. . . . Treatment at this point, I really have nothing to add since [Mr. Patterson] has already seen multiple specialists for his low back and multiple orthopedists. He recently had an MRI of the left knee in July 2009, which was completely normal. He had an MRI of the lumbar spine in June 2009 which also showed no abnormalities. Nothing has ever been uncovered to explain [Mr. Patterson's] symptoms, and he is already being treated by a pain clinic. . . .

(R. 28, 623). The ALJ noted Dr. Jesus Hernandez's January 26, 2009 findings that upon examination, Mr. Patterson had a "good range of motion in the lumbosacral spine and both knees without effusions or inflammatory changes." (R. 29, 327). According to Dr. Hernandez, these findings were "consistent with chronic localized pain syndrome." (R. 327).

The ALJ considered the opinion of Dr. Shelinder Aggarwal, Mr. Patterson's pain management physician, who found that Mr. Patterson's "pain is present to such an extent as to be distracting to adequate performance of daily activities or

work" and that physical activity would greatly increase his pain "to such a degree as to cause distraction from tasks or total abandonment of tasks." (R.29, 549). The ALJ rejected Dr. Aggarwal's opinion because it was inconsistent and unsupported by the full body of medical evidence provided by numerous medical specialists. (R. 30). She found that Dr. Aggarwal based his findings on the claimant's subjective complaints and not on medical evidence. Therefore, the ALJ awarded Dr. Aggarwal's opinion little to no weight. (R. 30).

With respect to Mr. Patterson's alleged psychiatric impairments, the ALJ reviewed the opinion of Dr. Fields, Mr. Patterson's treating psychiatrist, who on March 18, 2010 "opined that the claimant's depression affected but did not preclude the following abilities: performing activities of daily living; maintaining social functioning; completing tasks in a timely manner; responding appropriately to supervision and coworkers in a work setting." (R. 35, 551-552). The ALJ gave great weight to this portion of Dr. Fields's opinion because it was consistent with the record as a whole. (R. 35). Dr. Fields also "opined that the claimant's impairments seriously affected his ability to respond to customary work pressures and to understand, carry out, and remember instructions in a work setting." Dr. Fields stated, "because of multiple chronic physical problems affecting [the claimant] emotionally, [it is] difficult to separate the two." (R. 35, 551-552). The

ALJ observed that Dr. Fields submitted this opinion in March 2010 before Mr. Patterson's conditions improved with an adjustment to his dosage of Prozac.

The ALJ noted Mr. Patterson's history of depressive disorder and examined Mr. Patterson's daily activities and his brief work history. The ALJ concluded that Mr. Patterson's ability to perform these activities diminished the credibility of the allegation of disabling mental dysfunction. (R. 34). Furthermore, the ALJ drew attention to Mr. Patterson's prescription drug use and Mr. Patterson's inconsistent medical complaints to different physicians during a period of 10 days, which could have indicated some drug seeking behaviors. (R. 34).

The ALJ considered the opinion of Dr. John Haney, a consultative psychologist, who opined that Mr. Patterson's "ability to function in most jobs appear[s] moderately to severely impaired due to his physical and emotional limitations." (R. 515). According to Dr. Haney, with successful treatment, Mr. Patterson's psychiatric symptoms "might improve enough for him to be referred to vocational rehabilitation." (R. 515). The ALJ gave limited weight to this opinion because of the lack of medical evidence supporting Mr. Patterson's subjective complaints. The ALJ gave weight to the portion of the opinion that "states the claimant's depression causes moderate limitation in function, as this part of the opinion is supported by both Dr. Haney's examination notes and the longitudinal treatment notes of Dr. Fields." (R. 35).

Lastly, the ALJ gave great weight to the opinion of Dr. Estock, a state agency psychological consultant. On January 27, 2010, Dr. Estock "opined that the claimant had moderate limitation of functioning, but could remember simple one to two-step instructions and could tolerate changes in the work environment that were infrequent and gradually introduced." (R. 36, 528-529). The ALJ stated that she gave great weight to this opinion because the record as a whole supported the opinion, and it is consistent with the RFC analysis.

## **ANALYSIS**

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin*, 533 Fed. Appx. at 930. "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A claimant must prove that he is disabled. *Id.* (citing *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003). To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis. *Gaskin*, 533 Fed. Appx. at 930.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to

other work, in the light of his residual functional capacity, age, education, and work experience.

*Id.* (citation omitted).  "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments." *Id.* (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

Mr. Patterson argues that he is entitled to relief from the ALJ's decision because the ALJ accorded inappropriate weight to the opinion of a non-examining reviewing physician, Dr. Estock. (Doc 9 pp. 5-6). Specifically, Mr. Patterson points to inconsistencies between Dr. Estock's opinion and the 17 medical exhibits that superseded his opinion.  Mr. Patterson argues that because Dr. Fields's opinion superseded and contradicts Dr. Estock's opinion, Dr. Fields's opinion should carry more weight and invalidate Dr. Estock's opinon. Mr. Patterson notes a "nexus" that Dr. Fields found between Mr. Patterson's physical and mental limitations. (Doc. 9, pp. 6-7). Mr. Patterson also contends that Dr. Estock's opinion was inconsistent with Dr. Haney's opinion. (Doc. 9, pp. 6). He argues that the ALJ adopted Dr. Estock's opinion "wholesale in her RFC findings." (Doc. 9, p. 6). Mr. Patteron's contentions are without merit.

Mr. Patterson misinterprets the ALJ's findings concerning the weight of Dr. Estock's opinion. First, the ALJ did not adopt her RFC findings "wholesale" from Dr. Estock's opinion as Mr. Patterson suggests. The ALJ made her RFC findings

11

by examining all symptoms that are relevant and substantiated by objective medical evidence and other evidence in accordance with 20 CFR 416.929 and SSR 94-4p and 96-7p. The ALJ attributed great weight to Dr. Estock's opinion because his opinion was consistent with her RFC findings, which objective medical evidence supports as a whole. The record does not support Mr. Patterson's claim that the ALJ improperly adopted Dr. Estock's opinion.

The ALJ reviewed all of the medical evidence of record before making her RFC determination. She considered Dr. Fields's opinion, portions of which are inconsistent with Dr. Estock's conclusions. For example, the ALJ gave great weight to Dr. Fields's opinion that "[Mr. Patterson's] depression affected but did not preclude the following abilities: performing activities of daily living; maintaining social functioning; completing tasks in a timely manner; responding appropriately to supervision and coworkers in a work setting." (R. 35). The ALJ found that this opinion is consistent with the objective medical evidence. In contrast, the ALJ attributed little weight to Dr. Fields's opinion that Mr. Patterson demonstrated "a marked impairment in understanding, remembering and carrying out instructions; and in responding to customary work pressures" to the extent the opinion is inconsistent with the RFC findings. (R. 35, 551; Doc 15, p. 6). The ALJ did not err in attributing little weight to this portion of Dr. Fields's opinion even though Dr. Fields is a treating physician.

An ALJ must give the opinion of a treating physician considerable weight unless 'good cause' is shown to the contrary. *Phillips v. Barnhart*, 357 F. 3d 1232, 1240-41 (11th Cir. 2004).  Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*.; *see also Crawford*, 363 F.3d at 1159. "The ALJ must clearly articulate the reasons for giving less weight to a treating physician's opinion, and the failure to do so constitutes error. . . . 'Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.'" *Gaskin*, 533 Fed. Appx. at 931 (citing *Lewis,* 125 F.3d at 1440, and quoting *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011)).

The ALJ explained why she gave little weight to an unsupported portion of Dr. Fields's opinion. The ALJ noted that Dr. Fields submitted her opinion in March 2010, when her treatment notes indicated that Mr. Patterson's depression had worsened temporarily. (R. 35).  However, the ALJ found that other medical evidence in the record demonstrated that Mr. Patterson's condition improved in the months that followed because of a modification in his prescription medications, and no evidence indicated that Mr. Patterson's depression was disabling. (R. 35). Indeed, on May 13, 2010, Dr. Fields described Mr. Patterson as "feeling pretty

good" and "handling stress better." (R. 560). Dr. Fields treatment notes demonstrate that Mr. Patterson's depression was not disabling because his depression did not remain at a disabling level for a period of 12 months as 20 C.F.R. §§ 416.905(a) and 416.909 require. It was appropriate for the ALJ to consider all of Dr. Fields's treatment notes, not just the ones that found a marked impairment in understanding, remembering and carrying out instructions; and in responding to customary work pressures. (R. 551). Furthermore, medical conditions that are controlled with medication are not disabling. *See Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) (citing *James v. Bowen* 793 F.2d 702, 706 (5th Cir. 1986)).

The ALJ also found Dr. Fields's opinion less persuasive because Dr. Fields relied on Mr. Patterson's subjective complaints of pain, which the ALJ found were not explained or substantiated by the record. An ALJ may discredit a claimant's subjective complaints if she shows that clinical findings do not support those complaints. *See May v. Comm'r of Soc. Sec.*, 226 Fed. Appx. 955 (11th Cir. 2007); *see also Reeves v. Astrue*, 238 Fed. Appx. 507, 514 (11th Cir. 2007). In addition, SSR 96-4p states, "No symptom or combination of symptoms can be the basis for finding of disability, no matter how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of medical abnormalities." The

ALJ provided numerous examples of findings by specialists in orthopedics, rheumatology, and gastroenterology that do not support Mr. Patterson's subjective physical complaints. (R. 25-30, 266, 267, 297-300, 303, 306-309, 322-323, 327, 380-381, 383-386, 388, 407, 586, 591-593, 623, 630, 633-635, 638-639, 677, 679, 684, 686, 689, 701). Thus, the ALJ had good cause to discredit the part of Dr. Fields's opinion that reflected subjective physical complaints because the complaints were not bolstered by the evidence. *See Phillips v. Barnhart*, F. 3d 1232, 1240-41 (11th Cir. 2004); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985); *Crawford*, 363 F.3d at 1159. Therefore, the "nexus" that Dr. Fields found between Mr. Patterson's physical and emotional problems was inconsistent with objective medical evidence and consequently was entitled to little weight.

This same analysis applies to Mr. Patterson's argument that Dr. Estock's opinion was inconsistent that of consultative psychologist Dr. Haney. Mr. Patterson points to part of Dr. Haney's clinical review which states that Mr. Patterson's "ability to function in most jobs appeared moderately to severely impaired due to physical and emotional limitations." (R. 515). The ALJ showed that this portion of Dr. Haney's opinion relied on subjective complaints unsubstantiated by objective medical evidence. (R. 35).

In conclusion, the ALJ's RFC findings are consistent with the evidence as a whole. The ALJ properly discounted medical opinions that were unsubstantiated by objective medical evidence.

Mr. Patterson's next argues that an opinion of a non-examining reviewing physician is entitled to little weight. (Doc. 9, p. 7); *Swindle v. Sullivan*, 914 F. 2d 222 (11th Cir. 1990). Citing SSR 96-6p, Mr. Patterson claims that Dr. Estock's opinion would only be entitled to great weight if based on a complete and comprehensive longitudinal record. (Doc. 9, p. 7). Mr. Patterson asserts that the ALJ should have given more weight to the opinions of Mr. Patterson's treating physicians than to Dr. Estock's opinion. First, while not given the same weight as treating physicians, the findings of the state agency medical and psychological consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review. (SSR 96-6p). Therefore, Mr. Patterson's claim that the ALJ should afford little weight to Dr. Estock's opinion is incorrect, and the citations he uses to support his argument do not apply. The Eleventh Circuit has held that "[t]he law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."

*Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). Therefore, the evidence, taken as a whole, supports the ALJ's decision.

Mr. Patterson argues that his pain management physician, Dr. Aggarwal, was more qualified to provide an opinion than his treating physician. (Doc. 9, p. 8). Dr. Aggarwal based his opinion on Mr. Patterson's subjective complaints of pain. Dr. Aggarwal's opinion was inconsistent with the objective medical evidence from examinations by specialists in orthopedics and gastroenterology. These examinations did not reveal any severe impairment of the spine, knee or pelvis, no inflammatory arthritis, or connective tissue disorder (R. 266, 267, 297, 298-300, 303, 306-309, 322-323, 327, 380-381, 383-386, 388, 407, 586, 591-593, 623, 630, 633, 635, 638-639, 677, 679, 684, 686, 689, 701). Furthermore, neither Dr. Hernandez nor Dr. Jampala, both specialists in rheumatology, diagnosed Mr. Patterson with fibromyalgia, and Mr. Patterson's mild gastritis is controlled by medication. (R. 332, 407, 412-414). The ALJ stated that she gave Dr. Aggarwal's opinion "little to no weight" because his opinion was inconsistent with this other medical evidence of record. (R. 36). Because the evidence supported a conclusion that is contrary to the treating physician, the non-examining physician's opinion carried more weight. *See Sryock* 764 F.2d at 835. Therefore, the ALJ properly rejected Dr. Aggarwal's opinion. *See e.g., Phillips*, F. 3d at 1240-41 (11th Cir. 2004).

Mr. Patterson argues that the ALJ should have obtained a medical source opinion from a medical expert or some other consultative exam. (Doc. 9, pp. 8). The Court disagrees. In this case, the record was sufficient for the ALJ to make a decision because she evaluated many physical and mental health examinations. *See Outlaw v. Barnhart*, 197 Fed. Appx. 825 (11th Cir. 2006) (finding that the ALJ did not err in refusing to order a consultative exam because the record contained extensive medical records about the claimant's mental and physical complaints); *see also Fries v. Comm'r of Soc.* Sec. Admin., 196 Fed. Appx. 827 (11th Cir. 2006) (holding that the ALJ's failure to consult an orthopedic medical specialist was not an error because the record contained "sufficient and detailed medical records" from seven other doctors).

Mr. Patterson argues that the ALJ's mental RFC findings do not adequately reflect Mr. Patterson's moderate limitations concerning daily living, social functioning, and concentration. (Doc. 9, p. 8). Mr. Patterson submits that the ALJ's RFC merely limited him to unskilled work and did not address the limitations mentioned in the PRT or Mr. Patterson's ability to appropriately respond to supervision, coworkers and usual work situations. (Doc. 9, p. 10). However, under the ALJ's RFC, Mr. Patterson would be subject to limited social interaction when provided short, simple instructions and simple work-related decision-making. Furthermore, the ALJ found that Mr. Patterson was able to

maintain good relationships with his spouse and brother, and none of the numerous medical examiners Mr. Patterson saw noted any abnormal social behavior. (R. 31). Two of the physicians reported that Mr. Patterson has been able to interact appropriately. (R. 31). Dr. Marlin Gill indicated that Mr. Patterson could speak clearly and engaged in normal conversation, and Dr. Haney noted that while Mr. Patterson had a depressed mood, his conversation was logical and goal oriented. (R. 514, 518). In addition, Dr. Estock's medically substantiated observations supported the RFC, and Dr. Fields indicated that Mr. Patterson's depression affected but did not preclude social functioning and responding to supervision and coworkers in a work setting. (R. 551). Therefore, substantial medical evidence supported the ALJ's RFC findings. *See Heppell-Libsansky v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 693 (11th Cir. 2006).

Having examined the available evidence thoroughly, the ALJ determined that Mr. Patterson is not disabled. That finding rests on substantial evidence. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.

## CONCLUSION

For the reasons outline above, the court concludes that substantial evidence supports the ALJ's decision, and the ALJ applied proper legal standards.

Accordingly, the Court AFFIRMS the decision of the Commissioner. The Court will enter an order consistent with this memorandum opinion.

    **DONE** and **ORDERED** this September 12, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE